IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ALLAN A. PETERSEN,**

      **Plaintiff,**

v.                                        Civil Action No. 3:06cv114
                                              (Judge Bailey)

**ANDURAY E. WHITE, V. FERNANDEZ,**
**L. LEESON, RODNEY BUCKLEW,**
**D. YOST, SUSAN S. MCCLINTOCK,**
**DOMINIC A. GUTIERREZ, SR.,**
**B. CALLAHAN, C/O KOVSCEK,**
**R. TRYBUS AND WILLIAM LAYHUE,**

      **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I.   Factual and Procedural History

The *pro se* plaintiff initiated this case on October 27, 2006, by filing a civil rights complaint against the above-named defendants. On December 8, 2006, the plaintiff was granted permission to proceed as a pauper and assessed an initial partial filing fee of $46.88. The plaintiff paid his initial partial fee on January 26, 2007.

On June 6, 2007, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not warranted at that time. Accordingly, the United States Marshal Service was directed to serve process on the defendants. Service was perfected on or about June 12, 2006.

On October 18, 2007, the defendants filed a Motion to Dismiss, or for Summary Judgment. Consequently, a Roseboro Notice issued on October 31, 2007.

The plaintiff filed a response to the defendants' motion on January 8, 2008. This case is before the undersigned for a report and recommendation on the defendants' motion to dismiss.

## II. The Pleadings

### A. The Complaint

In the complaint, the plaintiff asserts that the defendants violated his First Amendment rights by retaliating against him for the filing of grievances, administrative remedies and complaints. Specifically, the plaintiff asserts that the defendants unlawfully censored his incoming general correspondence and outgoing legal and special mail correspondence, and unlawfully removed exhibits from his outgoing legal mail. Moreover, the plaintiff asserts that the defendants actions with regard to his mail were contrary the mandates of the Code of Federal Regulations and violated his Sixth Amendment right of meaningful access to the courts. As a result, the plaintiff seeks monetary damages, criminal charges, an injunction and declaratory relief. The plaintiff asserts that he has exhausted his administrative remedies.

### B. The Defendants' Motion to Dismiss

The defendants seek dismissal of the complaint for the following reasons:

1. The plaintiff failed to exhaust administrative remedies prior to filing the complaint;

2. The plaintiff cannot maintain a <u>Bivens</u> action against the defendants in their official capacities;

3. The plaintiff has failed to establish personal involvement on the part of defendants Gutierrez, McClintock and Callahan and the plaintiff cannot establish supervisory liability against those defendants;

4. The plaintiff cannot maintain this action against defendants Trybus and Layhue because they were in no way involved in the processing of the plaintiff's mail;

5. The plaintiff fails to establish a violation of his right to access the Courts;

6. The plaintiff fails to state a claim of retaliation;[1] and

7. The defendants are entitled to qualified immunity.

## C. The Plaintiff's Reply

In his reply, the plaintiff first objects to the United States Attorney representing the defendants. The plaintiff then cites additional support for his claims and otherwise reargues the claims made in the complaint. The plaintiff also asserts that the defendants are not entitled to qualified immunity and that his claims should not be dismissed for the failure to exhaust.

## III. Standard of Review

### A. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for

---

[1] It is noted that, in order to sustain a claim based on retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). However, inmates do not have a constitutional right to participate in grievance procedures. Id. Therefore, to the extent that the plaintiff asserts that he was retaliated against for the filing of grievances, those claims, even if exhausted, cannot be maintained.

3

summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.   Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at  256.  The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248.  Summary judgment is proper only "[w]here  the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. Analysis

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, *or any other federal law*, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a) (emphasis added). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[2] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, 548 U.S. 81 (2006) (recognizing the PLRA provisions contain a procedural default component).

The Bureau of Prisons ("BOP") makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Morgantown, those

---

[2] Id.

appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

Here, it is clear from the record, that while the plaintiff initiated the administrative remedy process as to his claims prior to filing the instant complaint, he had not completed those remedies before filing suit, as specifically required by the PLRA.[3] Moreover, although the plaintiff asserts in his reply that his administrative remedies were inadequate because of the actions of delay and abuse by BOP employees, that claim is refuted by the record.

Pertinent to this case, the plaintiff filed an inmate request to staff on August 4, 2006, asking whether mail room staff have the authority to open certified mail outside the presence of the inmate. See Defendants' Memorandum (dckt. 79-2), Ex. 5 at Att. A. In response, the plaintiff was told that policy permits staff to open certified mail outside the presence of the inmate unless it meets the special mail requirements. Id.

On August 7, 2006, the plaintiff submitted a grievance at the regional level complaining that staff retaliated against him. Id. at Att. B. The plaintiff's remedy was rejected because the matter was not sensitive and because the plaintiff had first failed to raise the issue at the institutional level. Id. Although the plaintiff was advised to resubmit his claim at the appropriate level, the plaintiff failed to follow through with that complaint. Id.

---

[3] To the extent that the plaintiff argues that prisoners are not required to exhaust Bivens claims, or to exhaust claims for monetary damages, those arguments are without merit. The caselaw cited by the plaintiff in support of those claims is pre-AEDPA. The AEDPA, effective in 1996, now clearly requires that all claims be exhausted, whether arising under § 1983 or any other federal law, see 42 U.S.C. § 1997(e)(a), and even when the relief sought is not available. Booth v. Churner, 532 U.S. at 741.

On August 21, 2006, the plaintiff executed Form 407 which states that he does not want to receive general correspondence.[4] Id. at Ex. 2, Att. C. Instead, general correspondence is to be returned to the sender without being opened or inspected.

On August 30, 2006, the plaintiff completed another inmate request to staff. Id. at Ex. 5, Att. B. This time, the plaintiff asked about the procedures for processing his mail since he executed the Form 407. Id. In the request, the plaintiff stated that correspondence from the Courts, the Department of Justice and the BOP is special mail that should be delivered to him and opened in his presence. Id. In response, the plaintiff was informed that he misunderstood what constituted special mail. Id. The plaintiff was advised that certain correspondence may be special mail, but only if it meets certain conditions. Id. However, the plaintiff was advised that he would receive his administrative remedy mail and all administrative mail was thereafter forwarded to the plaintiff even though it did not technically comply with the special mail requirements. Id.

On August 31, 2006, the plaintiff filed an administrative remedy claiming a denial of access to the administrative remedy process. Id. at Ex. 1, Att. B. The plaintiff completed both a Regional and Central Office appeal of that remedy. Id. However, that remedy was not fully exhausted until the denial by the Central Office in March of 2007, well after the filing of this case. Id.

On August 31, 2006, the plaintiff filed a second administrative remedy. Id. That remedy sought the return of certain legal documents the plaintiff contended he needed to file a civil action

---

[4] General correspondence is all incoming or outgoing correspondence other than special mail. 28 C.F.R. § 540.2(a). Special mail includes correspondence sent to "the U.S. Department of Justice (including the Bureau of Prisons), U.S. Attorneys Offices . . . U.S. Courts . . . Special mail also includes correspondence received from . . . the U.S. Department of Justice (excluding the Bureau of Prisons but including the U.S. Attorneys) . . . U.S. Courts . . . For incoming correspondence to be processed under the special mail procedures ( see §§ 540.18 - 540.19), he sender must be adequately identified on the envelope, and the front of the envelope must be marked "Special Mail - Open only in the presence of the inmate." 28 C.F.R. § 540.2(c).

in this court. Id. The plaintiff completed both a Regional and Central Office appeal of that remedy. Id. However, that remedy was not fully exhausted until the denial by the Central Office on April 19, 2007, well after the filing of this case. Id.

On September 14, 2006, the plaintiff filed two more administrative remedies. Id. In those remedies, the plaintiff sought to have mail from the district court and the BOP's Mid-Atlantic Regional Office be treated as special mail. Id. Moreover, the plaintiff sought an investigation into alleged tampering with his mail. Id. Those remedies were both appealed to the Regional and Central Offices, but final denial was not issued until May 2007, again, well after the filing of this case. Id.

Nonetheless, defendant Fernandez contacted the Clerk's Office of the United States Court for the Northern District of West Virginia and staff from the United States Attorney's Office for the Northern District of West Virginia. Id. at Ex. 4 (Declaration of Veronica Fernandez) at ¶¶ 10-11. In light of those conversations, the BOP granted the plaintiff special accommodation of mail from those entities, even where it did not comply with the special mail requirements, so the plaintiff could pursue his numerous civil cases. Id.

On October 17, 2006, the plaintiff filed two more administrative remedies claiming that his mail was being unlawfully censored. Id. at Ex. 1, Att. B. Those remedies were appealed to both the Regional and Central Offices, but final denial did not issue until May 2007. Id. Once again, completion of the plaintiff's administrative remedies did not occur until well after this case was filed. Id.

In his reply to the defendants' motion, the plaintiff concedes that while most of his administrative remedies were executed before the filing of this case, they were not completely

exhausted prior to the filing of this case. Reply (dckt. 88) at 14-16. The plaintiff seemingly argues, however, that exhaustion should be excused because the defendants, or other BOP staff members, intentionally delayed their responses to his administrative remedies beyond what is permitted in the regulations, simply to thwart the plaintiff's efforts to file a successful civil suit in federal court. Id. at 14-15. The plaintiff specifically argues that several of his administrative appeals were received by the Regional or Central Offices, and the response times were immediately extended without explanation or reason. Id. at 16. However, the plaintiff concedes that those remedies were eventually responded to and fully completed, but not until after the initiation of this case. Id. at 17. Thus, the plaintiff merely takes issue with the time in which it took to complete those processes and argues that such delay should somehow excuse the fact that he initiated this case prior to his remedies being completed. Id.

Pursuant to the Bureau of Prisons' administrative remedy procedures, codified at 28 C.F.R. § 542.10, et seq., the response time for administrative requests are as follows:

1. Warden - within 20 calendar days.
2. Regional Office - within 30 calendar days.
3. Central Office - within 40 calendar days.

See § 542.18. However, if it is determined that such a response time is insufficient to make an appropriate decision, the time for response may be extended "once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level." Id. Staff is required to inform the inmate, in writing, whenever such an extension is taken. Id. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level. Id.

In this case, the plaintiff's complaint was received by the Court on October 27, 2006. The following procedural history surrounds his administrative complaints:

1. On August 1, 2006, the plaintiff submitted a "sensitive" request to the Regional Office regarding the confiscation of certain legal papers, including his petition for writ of certiorari with the Supreme Court. See Defendants' Memorandum at Ex. 1, Att. E. That remedy was rejected as not sensitive and the plaintiff was advised to first file his claims with the appropriate level. Id. The plaintiff failed to pursue this claim further. Thus, this claims is not exhausted.

2. On August 4, 2006, the plaintiff filed an inmate request to staff inquiring as to the appropriate procedures regarding the processing of certified mail. See Defendants' Memorandum, Ex. 5 at Att. A. A response was provided that same day. Id. As the plaintiff's request was merely informational, no further action was taken.

3. On August 30, 2006, the plaintiff filed an informal request to staff complaining that mail room staff was improperly handling his general correspondence, certified mail and legal mail. Id. at Att. B. A response was provided the next day. Id. There is no evidence that the plaintiff further pursued his available administrative remedies with regard to that particular complaint, so those claims are not exhausted.

4. On September 3, 2006, the plaintiff submitted an informal remedy regarding the removal of documents from his court filings and the improper handling of his legal/special mail. See Defendants' Memorandum (dckt. 79) at Ex. 1, Att. F. The plaintiff received a response on September 7, 2006. Id. The plaintiff then filed a formal remedy with the Warden. That claim was denied on September 21, 2006. Id. Assuming the plaintiff immediately filed an appeal with the Regional Office, a response was not due until October 21, 2006. Had this appeal been denied and

an appeal taken to the Central Office, the earliest that a response from the Central Office would have been due was November 30, 2006, one month past the filing of this case. Accordingly, even if the BOP intentionally delayed its responses, that fact is inconsequential as it relates to exhaustion. The plaintiff's complaint was clearly premature.

It is clear from the undisputed facts in the record, that the plaintiff either failed to exhaust his administrative remedies with regard to the claims raised in the complaint, or he filed his claims prematurely. Pursuant to 28 C.F.R. § 542.10, et seq., the plaintiff filed this complaint prior to the expiration of the normal time limitations allowed for an administrative response. Therefore, even assuming that the plaintiff is correct, and BOP staff did inappropriately delay responding to his complaints, it does not make a difference for purposes of exhaustion. Moreover, the undisputed record shows that had the plaintiff followed the appropriate procedures, instead of hastily filing suit in this Court, he could have exhausted his administrative remedies prior to filing suit.[5]

### IV. Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion to Dismiss or for Summary Judgment (dckt. 79) be **GRANTED** and that the complaint be **DISMISSED without prejudice**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable John Preston Bailey, United

---

[5] Most of plaintiff's claims were eventually exhausted, albeit outside the normal time limitations set forth in the regulations. Any violation of the time limitations in this case is not prejudicial, however, because the plaintiff filed his claims prematurely.

States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: June 18, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE